IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>REAL PROPERTY AND )<br>IMPROVEMENTS KNOWN AS )<br>35 QUEENSLAND LANE NORTH, )<br>PLYMOUTH, MINNESOTA 55447 )<br>)<br>**Defendant *in Rem.*** )<br>_____) | Civil Action No. 1:20cv___ |

## **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Comes now the Plaintiff, United States of America, through its undersigned attorneys, and alleges as follows:

### **NATURE OF THE ACTION**

1. The United States brings this action *in rem* seeking the forfeiture of all right, title, and interest in real property and improvements known as 35 Queensland Lane North, Plymouth, Minnesota, 55447 (the "Defendant Property").

2. The United States' claim arises from a scheme to defraud a company (hereafter referred to as the "Victim Company"), and the Defendant Property constitutes the proceeds of violations of 18 U.S.C. § 1343 (Honest Services Wire Fraud) and 18 U.S.C. § 1349 (Wire Fraud Conspiracy), as well as property involved in violations of 18 U.S.C. § 1956(h) (Money Laundering Conspiracy), and 18 U.S.C. § 1957 (Money Laundering), and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and § 981(a)(1)(C) and to 18 U.S.C. § 985.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over actions commenced by the United States under 28 U.S.C. § 1345, and over forfeiture actions under 28 U.S.C. § 1355(a) and (b).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia. Venue is proper within this judicial district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia.

## FACTUAL ALLEGATIONS

5. The Federal Bureau of Investigation ("FBI") is investigating a fraudulent kickback scheme involving individuals employed by Company 1, a Denver, Colorado-based commercial real estate and development company, and certain employees of the Victim Company.

6. Employee 1 was the Victim Company's employee overseeing real estate development in Northern Virginia, within the Eastern District of Virginia, for the Victim Company. Until in or about July 2019, Employee 2 was Employee 1's supervisor at the Victim Company.

7. Since 2018, the Victim Company has executed leases with Company 1 for nine real estate parcels in Northern Virginia, with a total approved to be spent for these deals of approximately $415.5 million.

8. The scheme involving Company 1 involved payments, or kickbacks, to a shell entity called the Villanova Trust, which was controlled by Employee 1's relative.

9. From in or about March 2018 to in or about August 2019, financial records indicated that Company 1 wired the Villanova Trust approximately $5,112,983.

10. In turn, from in or about August 2018 to in or about August 2019, the Villanova Trust wired approximately $3,375,625 to a bank account maintained for the benefit of Employees 1 and 2.

11. The ensuing investigation uncovered additional fraudulent payments that benefitted Employees 1 and 2 from developers in conjunction with their employment with the Victim Company.

12. Victim Company employees were not authorized to benefit from "referral fees" or other financial compensation or benefits paid by Company 1, or any other developers, related to the Victim Company's real estate development projects.

13. Employee 1 has admitted accepting funds from Company 1 associated with his/her job with the Victim Company and that an employee of Company 1, Person 3, paid the kickbacks to the Villanova Trust associated with the Victim Company's development deals in Northern Virginia.

14. In addition to the kickback payments received from Company 1 via the Villanova Trust, Employees 1 and 2 received or benefitted from approximately $5,818,955 from other developers in 2019 for Victim Company projects in Northern Virginia.

### *Tracing of Fraud Proceeds to the Defendant Property*

15. Financial records reflect that between August 2018 and December 2019, $9,194,580.50 in fraud proceeds were credited to a First Western Trust Bank account ending 3698 maintained for Employees 1 and 2.

16. First Western Trust Bank records show that between November 2018 and December 2019, seven transfers totaling $6,244,442.19 were made between First Western Trust Bank account ending 3698 and First Western Trust Bank account ending 0525.

17. The only source of funds in First Western Trust Bank account ending 0525 were the above-described intra-bank transfers from First Western Trust Bank account ending 3698. As such, the funds in First Western Trust Bank account ending 0525 were fully attributable to proceeds of the fraudulent activity.

### *Payments to Custom Home Builders Title, LLC*

18. On or about November 19, 2019, a wire transfer in the amount of $400,000.00 was sent from First Western Trust Bank account ending 0525 to an account held at Wells Fargo Bank in the name of Custom Home Builders Title, LLC. The additional information provided in the wiring instructions stated: RE: 35 Queensland LN N Plymouth, MN.

19. On or about July 2, 2019, a wire transfer in the amount of $100,000.00 was sent from First Western Trust Bank account ending 3698 to an account held at Wells Fargo Bank in the name of Custom Home Builders Title, LLC. Additional information provided in the wiring instructions reflected that the funds were for 35 Queensland Lane N Plymouth MC 55441, which is the Defendant Property.

20. On or about August 15, 2019, a wire transfer in the amount of $400,000.00 was sent from First Western Trust Bank account ending 0525 to an account held at Wells Fargo Bank in the name of Custom Home Builders Title, LLC. The additional information provided in the wiring instructions reflected that the funds were for 35 Queensland Lane N Plymouth MC 55441, which is the Defendant Property.

21. In total, $900,000.00 of fraud proceeds was paid to Custom Home Builders Title, LLC for the Defendant Property.

*Payments to KRJ, Inc.*

22. On or about January 8, 2019, a wire transfer in the amount of $100,000.00 was sent from First Western Trust Bank account ending 0525 to an account held at Bank Cherokee in the name of KRJ, Inc.

23. The investigation has revealed that the $100,000.00 payment to KRJ, Inc., was an up-front deposit for the Defendant Property.

24. On or about December 31, 2019, a wire transfer in the amount of $600,000.00 was sent from First Western Trust Bank account ending 0525 to an account held at Bank Cherokee in the name of KRJ, Inc.

25. KRJ, Inc. is the construction company that built the house on the Defendant Property.

26. In total, $700,000.00 of fraud proceeds were paid to KRJ, Inc., relating to construction and other work at the Defendant Property.[1]

*Payments to The Holmers Group, Inc.*

27. On or about December 28, 2018, a wire transfer in the amount of $50,000.00 was sent from First Western Trust Bank account ending 0525 to an account held at Bank of America in the name of The Holmers Group, Inc.

---

[1] According to KRJ, Inc, the $600,000.00 payment was mistakenly paid to KRJ, Inc. for the construction of the Defendant Property. According to KRJ,Inc's. owner, this payment should have been paid to Custom Home Builders Title, who would then disburse funds to KRJ, Inc. via draws as construction was completed. Upon receipt of the $600,000.00 payment, KRJ, Inc. transferred the $600,000.00 to Custom Home Builders Title and then subsequently submitted draws to Custom Home Builders Title as construction on the Defendant Property was completed.

28. On or about February 12, 2019, a wire transfer in the amount of $20,000.00 was sent from First Western Trust Bank account ending 0525 to an account held at Bank of America in the name of The Holmers Group, Inc.

29. Records reflect that on or about December 28, 2018, the Holmers Group, Inc., sold the land on which the Defendant Property was constructed.

## FIRST CLAIM FOR RELIEF
(Forfeiture under 18 U.S.C. §§ 981(a)(1)(C))

30. The United States incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

31. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title) or a conspiracy to commit such an offense."

32. Title 18, United States Code, Section 1956(c)(7)(D) provides that the term "specified unlawful activity" includes "an offense under . . . section 1343 (relating to wire fraud)."

33. As set forth above, the Defendant Property constitutes criminal proceeds of the wire fraud and wire fraud conspiracy.

34. As such, the Defendant Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF
(Forfeiture under 18 U.S.C. § 981(a)(1)(A))

35. The United States incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

36. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957 . . . of this title, or any property traceable to such property."

37. Title 18, United States Code, Section 1956(a)(1) imposes a criminal penalty on any person who:

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (B) knowing that the transaction is designed in whole or in part—
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

38. Title 18, United States Code, Section 1957 imposes a criminal penalty on any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." A "monetary transaction" includes the "deposit, withdrawal, transfer or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution." 18 U.S.C. § 1957(f)(1).

39. Title 18, United States Code, Section 1956(h) imposes a criminal penalty on any person who conspires to commit any offense defined in 18 U.S.C. §§ 1956 or 1957.

40. As noted above, "specified unlawful activity" includes wire fraud.

41. As set forth above, the Defendant Property constitutes property involved in money laundering transactions in violation of 18 U.S.C. §§ 1956(h) and 1957, and is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in its favor against the Defendant Property; that pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed; that the Defendant Property be forfeited to the United States of America and delivered into its custody for disposition according to law; that Plaintiff be awarded its costs and disbursements in this action; and for such and further relief as this Court may deem just and proper.

Dated: June 1, 2020

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/ Karen L. Taylor
Karen Ledbetter Taylor
Kevin Hudson
Assistant United States Attorneys
Attorneys for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3982
Email Address: Karen.taylor2@usdoj.gov
kevin.hudson@usdoj.gov

## VERIFICATION

Before me, the undersigned authority, on this date personally appeared FBI Special Agent Randy C. Combs, who after being duly sworn, states that he makes this verification for and on behalf of the Plaintiff, United States of America, that he has read the foregoing complaint and knows the contents thereof, that his information and knowledge about its contents was obtained by him in the course of his investigation and that of other law enforcement officers and government agents, and that the matter and things set forth in the complaint are true to the best of his knowledge, information and belief.

Randy C. Combs
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
this 1ST day of June 2020

Notary Public Lauren S. Day

My commission expires:
Alexandria, Virginia
May 31, 2021

Lauren S. Day
NOTARY PUBLIC
REG. #7579092
MY COMMISSION EXPIRES
5/31/2021
COMMONWEALTH OF VIRGINIA